# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## PEOPLE v ARMOGEDA

Docket No. 167760. Argued on application for leave to appeal November 6, 2025. Decided July 29, 2026.

Defendant, Evan Taylor Armogeda, was convicted, following a jury trial, of assault with intent to commit murder (AWIM), MCL 750.83; carrying a dangerous weapon with unlawful intent, MCL 750.226; and third-degree fleeing and eluding, MCL 257.602a(3)(b). At sentencing, defendant's guidelines minimum sentence range was calculated at 270 to 450 months for AWIM, and the trial court, David L. Jordon, J., imposed a within-guidelines controlling sentence of 360 to 600 months' imprisonment. Defendant moved to correct an invalid sentence, arguing that Prior Record Variable (PRV) 2 and Offense Variable (OV) 12 were erroneously scored and that the proper guidelines range was 171 to 285 months. The prosecution conceded that the trial court erroneously scored PRV 2 and incorrectly calculated the applicable guidelines range but asserted that the proper guidelines range would be 225 to 375 months. Instead of resolving the scoring issue and determining the appropriate guidelines range, the trial court denied the motion, holding that 360 months was the lowest minimum sentence it found to be appropriate and that it would impose the same minimum sentence regardless of the applicable guidelines range.

The Court of Appeals, BORRELLO, P.J., and MURRAY and LETICA, JJ., affirmed defendant's sentence in an unpublished per curiam opinion issued on October 4, 2024 (Docket No. 365184), holding that the trial court did not err when it acknowledged two possible corrected guidelines ranges but clearly stated that it intended to impose the same minimum sentence regardless, such that resentencing was unnecessary; however, the panel remanded for adjustment of the guidelines range to reflect the correct scoring of PRV 2 and OV 12 and for correction of the presentence investigation report (PSIR) to reflect those determinations. On remand, the parties stipulated that PRV 2 and OV 12 should each be scored at zero points and that the proper guidelines range was 171 to 285 months. The PSIR was amended to reflect these corrections, but no other substantive adjustments were made and defendant's controlling AWIM sentence remained the same. Defendant sought leave to appeal in the Supreme Court, which ordered oral argument on the application, directing the parties to address whether resentencing is required when the trial court has clearly indicated that it would have imposed the same sentence regardless of a scoring error but the sentence does not fall within the appropriate guidelines range as amended. ___ Mich ___; 19 NW3d 385 (2025).

In an opinion by Chief Justice CAVANAGH, joined by Justices WELCH, BOLDEN, THOMAS, and HOOD, in lieu of granting leave to appeal, the Supreme Court *held*:

When a defendant's sentence is based on inaccurate information and falls outside the corrected guidelines range, the defendant is entitled to resentencing, even if the trial court has indicated that it would impose the same sentence on remand. *People v Francisco*, 474 Mich 82 (2006), which held that a defendant is entitled to resentencing if the trial court relied on incorrectly scored guidelines even when the defendant's initial sentence falls within the corrected guidelines range, does not conflict with *People v Lockridge*, 498 Mich 358 (2015), which held that Michigan's sentencing guidelines are advisory. Because the trial court in this case relied on an incorrectly calculated guidelines range and refused to reconsider the sentence in light of the corrected scoring guidelines as *Francisco* requires, defendant is entitled to resentencing.

1. The holding in *Francisco* does not conflict with Michigan's post-*Lockridge* sentencing scheme and remains relevant today. Nothing in *Lockridge* sanctions sentencing on the basis of inaccurate information or authorizes sentencing courts to disregard the applicable guidelines range. *Lockridge* expressly held that a judge must consult the applicable guidelines range and take it into account when imposing a sentence. Although the mandatory statutory guidelines were in place when *Francisco* was decided, defendants are still entitled to be sentenced on the basis of accurate information under the advisory guidelines. *Lockridge* cannot reasonably be read to deny a defendant whose sentence was based on inaccurate information and falls outside the corrected guidelines range the opportunity to be resentenced. Further, while *Francisco* relied in part on the portion of MCL 769.34(10) that required appellate affirmation of within-guidelines sentences absent error—which was subsequently severed by *People v Posey*, 512 Mich ___ (2023) (opinion by BOLDEN, J.), as inconsistent with *Lockridge*—the *Francisco* Court was concerned only with the permissive aspect of this provision, which authorized resentencing when the trial court relied on inaccurate information; this is not in tension with *Lockridge*. And although *Francisco* articulated an exception to its holding by declining to require resentencing where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range, if the trial court makes no such indication or if—as in this case—the original sentence exceeds the corrected guidelines range, a defendant is entitled to resentencing.

2. In this case, although the trial court concluded that the sentence imposed was proportionate regardless of the applicable guidelines range, the trial court erred by refusing to reconsider the sentence in light of the corrected scoring guidelines as *Francisco* requires, and the Court of Appeals erred by prematurely affirming defendant's sentence before remanding to the trial court for the appropriate guidelines range to be determined. Defendant is entitled to resentencing, during which the court must score the applicable sentencing variables only on the basis of accurate information, correctly calculate the recommended minimum guidelines range, and consider the corrected guidelines range when imposing a new sentence. The trial court is not precluded from imposing the same sentence on remand if that sentence is proportionate to the seriousness of the circumstances surrounding the offense and the offender; further, the trial court retains discretion to depart from the guidelines range but remains bound by *Lockridge*'s requirement that any such departure be reasonable.

Court of Appeals judgment reversed in part; case remanded to the trial court for resentencing.

Justice BERNSTEIN, concurring in part and dissenting in part, agreed with the majority's decision to reverse and remand for resentencing but disagreed with the majority's decision to address whether *Francisco* conflicts with *Lockridge*. Justice BERNSTEIN would have held that the trial court erred by refusing to resolve the scoring issues that prevented it from finding what guidelines range was applicable, because that determination had a meaningful impact on how defendant's sentence could be reviewed on appeal. The need for individualized sentencing based on accurate information alone justified the reversal of the sentence imposed in this case without reliance on *Francisco*. Further, the majority did not adequately address what impact *Lockridge*'s holding that the legislative guidelines are merely advisory had on *Francisco*.

Justice ZAHRA, dissenting, would have followed the remand procedures set forth in *United States v Crosby*, 397 F3d 103 (CA 2, 2005), and adopted in *Lockridge* rather than require a full resentencing. Reliance on *Francisco* to require resentencing was misplaced because the sentencing court expressly stated on the record that it would not sentence defendant to less than 30 years' imprisonment even if defendant's arguments relating to the guidelines scoring were meritorious and even if this sentence was outside of defendant's advisory guidelines range. Justice ZAHRA would have permitted the trial court to first address whether it would have imposed the same sentence had it not relied on inaccurate information or scoring, with resentencing required only if the trial court believed that it would have sentenced defendant differently.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 29, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                      No. 167760

EVAN TAYLOR ARMOGEDA,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, C.J.

This case concerns whether resentencing is required where a defendant's sentence is based on inaccurate information and exceeds the corrected guidelines range but the trial court indicates it would impose the same sentence on remand. To resolve this question, we consider whether our decision in *People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006), which held that resentencing is required in these circumstances, is at odds with *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), where we held that Michigan's

sentencing guidelines are discretionary. We hold that these cases are not in conflict and reaffirm *Francisco*'s conclusion that, when a sentencing court relies on an incorrectly calculated guidelines range, a defendant is entitled to be resentenced. Accordingly, we hold that defendant is entitled to resentencing in this case, and thus the Court of Appeals erred in affirming his sentence. On remand, the trial court must rescore the guidelines and reconsider the sentence in light of the corrected guidelines range but may, in its discretion, impose the same sentence if the court finds it to be reasonable and proportionate. If the sentence imposed after resentencing is not within the guidelines range, the trial court must articulate the reasons for its departure. See MCR 6.425(D)(1)(e). We therefore reverse the judgment of the Court of Appeals in part and remand to the trial court for resentencing.

## I. FACTS & PROCEDURAL HISTORY

Defendant was convicted by a jury of assault with intent to commit murder (AWIM), MCL 750.83; carrying a dangerous weapon with unlawful intent, MCL 750.226; and third-degree fleeing and eluding, MCL 257.602a(3)(b). The trial court imposed a controlling sentence of 360 to 600 months for AWIM. At sentencing, defendant's guidelines range was calculated at 270 to 450 months for AWIM, thus making defendant's sentence a within-guidelines sentence. However, following sentencing, defendant moved to correct an invalid sentence, arguing that both Prior Record Variable (PRV) 2 and Offense Variable (OV) 12 were erroneously scored.

At a hearing held on the motion, the prosecution conceded that PRV 2 was erroneously scored and that the proper guidelines range would be 225 to 375 months; however, defendant argued that a further correction to PRV 2 was necessary, such that the

2

proper guidelines range would instead be 171 to 285 months. A change in the scoring of OV 12 would not have affected the guidelines range. At the hearing, the trial court noted the difference between the guidelines ranges as conceded by the prosecution and as argued by defendant. Instead of resolving the issue of the proper scoring of PRV 2 and OV 12 and deciding which guidelines range applied, the trial court held that 360 months was the lowest minimum sentence it found to be appropriate and that it would impose the same minimum sentence regardless of the applicable guidelines range. The trial court explained its rationale:

> It's nothing scientific, honestly. It's just not a scientific thing. It's because there was a—there was a video that probably got played several times in the car. And—but for just the confluence of a lot of fortuitous circumstances, the victim wouldn't have been at the trial to testify, because he would have been dead. And he lost a great percentage of blood in his body. I can't remember, for the record, what it was, but it was a big number.

Accordingly, the trial court denied defendant's motion.

The Court of Appeals affirmed defendant's sentence in an unpublished per curiam opinion, holding that the trial court did not err when it "acknowledged two possible corrected guideline ranges but clearly stated that it intended to impose the same minimum sentence regardless so that resentencing was unnecessary." *People v Armogeda*, unpublished per curiam opinion of the Court of Appeals, issued October 4, 2024 (Docket No. 365184), pp 8-9. However, the Court of Appeals did "remand for a hearing to clarify the correct assessment of PRV 2, and adjustment of the guidelines sentencing range to consider the correct scoring of PRV 2 and OV 12, and correction of the [presentence investigation report (PSIR)] to reflect these determinations." *Id*. at 9. On remand, the parties submitted a stipulated order, which the trial court entered. The stipulated order

3

noted that PRV 2 and OV 12 should each be scored at zero points and that the proper guidelines range was thus 171 to 285 months. The PSIR was amended to reflect these corrections. No other substantive adjustments were made, and defendant's controlling AWIM sentence remains the same.

Defendant then sought leave to appeal in this Court. We ordered oral argument on the application, directing the parties to address "whether resentencing is required where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error, but the sentence does not fall within the appropriate guidelines range as amended. See *People v Francisco*, 474 Mich 82, 89 n 8 (2006); see also *People v Lockridge*, 498 Mich 358 (2015)." *People v Armogeda*, ___ Mich ___, ___; 19 NW3d 385, 385 (2025).

## II. SENTENCING PRINCIPLES

In 1902, voters passed an amendment to the Michigan Constitution of 1850 authorizing indeterminate sentencing, which has since been continuously enshrined in our state Constitution. See Const 1850, art 4, § 47; Const 1908, art 5, § 28; Const 1963, art 4, § 45. In an indeterminate sentencing system, the sentencing judge does not determine the exact amount of time a defendant will serve, as illustrated by the controlling sentence of 360 to 600 months in this case. See *Black's Law Dictionary* (12th ed) (defining "indeterminate sentencing" as "[t]he practice of not imposing a definite term of confinement, but instead prescribing a range for the minimum and maximum term"). A certain amount of judicial discretion is inherent in such a system. In 1983, in an attempt to remedy disparities in sentencing, Michigan first employed advisory sentencing guidelines,

4

which were promulgated by an administrative order of this Court. See Administrative Order No. 1983-3, 417 Mich cxxi (1983). Because these guidelines were merely advisory, sentencing disparities continued, and the Legislature enacted mandatory sentencing guidelines in 1998. See 1998 PA 317; MCL 777.1 *et seq*. Except where permitted by statute, MCL 769.34(3), as amended by 1998 PA 317, trial courts were required to impose minimum sentences within the guidelines range, MCL 769.34(2), as amended by 1998 PA 317.

Two decades ago, this Court made clear that it would be "fundamentally unfair to deny a defendant . . . the opportunity to be resentenced on the basis of accurate information" if the sentencing court's error altered the appropriate guidelines range. *Francisco*, 474 Mich at 89-90 (comma omitted). While the applicable sentencing principles have evolved in the intervening years, trial courts are still *required* to "consult the applicable guidelines range and take it into account when imposing a sentence." *Lockridge*, 498 Mich at 392. This requirement serves multiple purposes. Not only does it assist in creating a record "to facilitate appellate review" of the sentence, *id*., it also provides a "meaningful benchmark" that contributes to the fairness of the sentencing process, *Rosales-Mireles v United States*, 585 US 129, 133; 138 S Ct 1897; 201 L Ed 2d 376 (2018) (quotation marks and citation omitted); see also *id*. at 141 ("[T]he public legitimacy of our justice system relies on procedures that are neutral, accurate, consistent, trustworthy, and fair, and that provide opportunities for error correction.") (quotation marks and citation omitted);[1] *Francisco*, 474 Mich at 89-90.

---

[1] We note as persuasive the United States Supreme Court's continued construction of the federal sentencing guidelines. See *Lockridge*, 498 Mich at 391. Despite making those guidelines advisory in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621

In *Francisco*, 474 Mich at 88-92, this Court held that a defendant is entitled to resentencing if the trial court relied on incorrectly scored guidelines—even when the defendant's initial sentence falls within the corrected guidelines range. The defendant in that case appealed his sentence of 102 to 480 months. *Id.* at 88. Under the sentencing guidelines, as scored by the trial court, the defendant's sentence fell within the minimum sentence range of 87 to 217 months. *Id.* However, the trial court had improperly scored OV 13 at 25 points. *Id.* The correctly scored guidelines "actually set forth a minimum range of 78 to 195 months." *Id.* Because "the scoring error altered the appropriate guidelines range," *id.* at 89, this Court remanded for resentencing, explaining that "[a] defendant is entitled to be sentenced by a trial court on the basis of accurate information," *id.* at 88, 92.[2] Thus, "when a trial court sentences a defendant in reliance upon an inaccurate guidelines range, it does so in reliance upon inaccurate information," *id.* at 89 n 7, even if "the difference between the mistaken and the correct guidelines ranges is relatively small," *id.* at 91. The Court carved out one exception to its holding by declining to require resentencing "where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range." *Id.* at 89 n 8, citing *People v Mutchie*, 468 Mich 50, 51; 658 NW2d 154

---

(2005), the Court has said that sentencing "[g]uidelines should be the starting point and the initial benchmark" at sentencing. *Gall v United States*, 552 US 38, 49; 128 S Ct 586; 169 L Ed 2d 445 (2007). "Of course, to consult the applicable Guidelines range, a district court must first determine what that range is." *Rosales-Mireles*, 585 US at 133. Accordingly, failure to calculate the correct guidelines range is error. *Id.* at 134.

[2] The Court made clear that, "[w]here a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Francisco*, 474 Mich at 89 n 8, citing *People v Davis*, 468 Mich 77, 83; 658 NW2d 800 (2003).

(2003). But if the trial court makes no such indication or if the original sentence exceeds the corrected guidelines range, a defendant is entitled to resentencing. See *Francisco*, 474 Mich at 89 n 8.

Nine years later, this Court in *Lockridge* held that Michigan's previously mandatory sentencing guidelines are advisory only. *Lockridge*, 498 Mich at 364-365. There, the Court ensured that the application of the guidelines did not run afoul of the Sixth Amendment, responding to the United States Supreme Court's decisions in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013), and *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). See *Lockridge*, 498 Mich at 364-365, 383. The Court also held that sentences that depart from the guidelines must be reviewed for reasonableness. *Id*. at 391-392. As a result, trial courts no longer need to justify a departure from the guidelines with "substantial and compelling reasons." *Id*. at 392. But the *Lockridge* Court made clear that the guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id*. at 391.

This Court has also held that, when reviewing a sentence for reasonableness, "the proper inquiry . . . is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (citation omitted). This Court recently clarified that within-guidelines sentences are reviewed for reasonableness as well. *People v Posey*, 512 Mich ___, ___; 1 NW3d 101, 122-123 (2023) (opinion by BOLDEN, J.).

7

" 'Sentencing courts must . . . continue to consult the applicable guidelines range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review.' " *Steanhouse*, 500 Mich at 470, quoting *Lockridge*, 498 Mich at 392 (alteration and ellipses in *Steanhouse*); see also *Posey*, 512 Mich at ___; 1 NW3d at 122-123 (opinion by BOLDEN, J.).

### III. ANALYSIS

The Court's reasoning in *Francisco* does not conflict with Michigan's post-*Lockridge* sentencing scheme. Nothing in *Lockridge* sanctions sentencing based on inaccurate information. Nor does *Lockridge* authorize sentencing courts to disregard the applicable guidelines—quite the opposite. See *Lockridge*, 498 Mich at 391. Instead, *Lockridge* held expressly that a judge "*must* . . . consult the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 392 (emphasis added). Following *Lockridge*, this Court has reiterated that scoring the guidelines remains mandatory. See *People v Geddert*, 500 Mich 859, 859 (2016) ("Even though the guidelines ranges are now advisory, the scoring of the guidelines themselves is mandatory . . . ."). So although the mandatory statutory guidelines were still in place when this Court decided *Francisco*, the holding in that case is no less relevant today. "[A]n erroneously calculated guidelines range" results in the same "dilemma" under the advisory guidelines: "the defendant will have been given a sentence which stands differently in relationship to the correct guidelines range than may have been the trial court's intention." *Francisco*, 474 Mich at 91-92. *Lockridge* cannot reasonably be read to deny such a defendant the "opportunity to be

8

resentenced on the basis of accurate information" in these circumstances. *Francisco*, 474 Mich at 90.

And while *Francisco* relied in part on a statutory provision that is no longer in effect, the Court was not concerned with the portion of the statute that conflicted with *Lockridge*. Specifically, *Francisco* cited MCL 769.34(10), which provided as follows:

> [I]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. [*Francisco*, 474 Mich at 88, quoting MCL 769.34(10), as amended by 2002 PA 666 (quotation marks and emphasis omitted).]

*Francisco* explained that the statute permitted resentencing only if a within-guidelines sentence was based on inaccurate guidelines scoring or information—the circumstances at issue in that case. See *Francisco*, 474 Mich at 88. In *Posey*, 512 Mich at ___; 1 NW3d at 124 (opinion by BOLDEN, J.), this Court severed this provision as inconsistent with *Lockridge* because it required appellate affirmation of within-guidelines sentences absent error. See also *id*. at ___; 1 NW3d at 123 ("[T]he portion of MCL 769.34(10) that requires appellate affirmation of within-guidelines sentences that are based on accurate information without scoring errors is unconstitutional because, as we explained in *Lockridge*, it would necessarily render the guidelines mandatory."). The Court in *Francisco* was only concerned with the permissive aspect of the provision—authorizing resentencing when the trial court relied on inaccurate information—which is not in tension with *Lockridge*.[3]

---

[3] While the partial dissent claims that *Francisco* relied on the mandatory nature of MCL 769.34(10), the only mandatory directive in that provision required the Court of Appeals to affirm "a minimum sentence [that] is within the appropriate guidelines sentence range . . . absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." This directive was not implicated in

9

Despite the shifts in our sentencing law, we have consistently emphasized the need for an individualized sentence based on accurate information:

> To so tailor the sentence, the judge must gather complete and detailed information about the offender. The judge must assess the reliability of the information received, assure that it is reasonably up-to-date, determine its competency as a sentencing consideration, and resolve challenges to its accuracy. [*People v Coles*, 417 Mich 523, 537; 339 NW2d 440 (1983), overruled in part on other grounds by *Milbourn*, 435 Mich at 634-636, quoting *People v Pulley*, 411 Mich 523, 529-530; 309 NW2d 170 (1981) (quotation marks omitted).]

This necessarily means that criminal defendants must be afforded "a reasonable opportunity to challenge the accuracy of the information relied on in passing sentence," *People v Eason*, 435 Mich 228, 234; 458 NW2d 17 (1990) (considering facts that trigger a statutory sentencing enhancement), including information contained in the PSIR, see, e.g., *People v Miles*, 454 Mich 90, 96-97; 559 NW2d 299 (1997) (collecting cases).[4]

Moreover, meaningful appellate review requires sentencing based on accurate information. Our current advisory guidelines require the trial court to score the guidelines and consult them at sentencing. Such consultation necessarily requires that the trial court has considered the accurate guidelines and has made a judicial choice about the sentence given with reference to those accurate guidelines. It is impossible for an appellate court to

---

*Francisco* because the trial court there relied on inaccurate information *and* incorrectly scored the sentencing guidelines. Instead, *Francisco* relied on the longstanding principle— which the Legislature enshrined in MCL 769.34(10)—that appellate courts are obligated to correct sentencing errors that alter the sentencing guidelines range. Our conclusion that this obligation survived *Lockridge* is not a radical proposition; it is consistent with our post-*Lockridge* jurisprudence, as discussed above.

[4] See also *People v Owens*, 508 Mich 1021, 1023 (2022) (CLEMENT, J., concurring); *People v Hernandez*, 508 Mich 971, 974 (2021) (VIVIANO, J., concurring).

10

discern whether that judicial choice is reasonable when that choice was not made with accurate information. Accordingly, the trial court must, at a bare minimum, articulate the correct guidelines scores and range to provide a record sufficient "to facilitate appellate review" of the sentence. *Lockridge*, 498 Mich at 392.

Relatedly, when a sentence departs from the sentencing guidelines range, our court rules require the trial court to "articulate the reasons justifying that specific departure." MCR 6.425(D)(1)(e). In cases such as this, the trial court could not possibly comply with MCR 6.425(D)(1)(e) without first knowing whether it was departing from the sentencing guidelines range.

Finally, the principles of fundamental fairness that guide *Francisco*'s holding have not been diminished by this Court's subsequent decisions. This Court has long held that an error in a criminal proceeding that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings" warrants reversal, even if that error is unpreserved. *Lockridge*, 498 Mich at 392-393. Fairness in sentencing is necessary to protect not only defendants' rights but also judicial integrity and public trust in the judiciary. See *Francisco*, 474 Mich at 92 ("[R]equiring resentencing . . . also respects the trial court's interest in having defendant serve the sentence that it truly intends."). See also *Rosales-Mireles*, 585 US at 140 ("The risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the [trial] court plays in calculating the range and the relative ease of correcting the error.").

Requiring trial courts to sentence defendants on the basis of accurate information is not a controversial concept but rather is a matter of fundamental fairness and necessary for

11

meaningful appellate review. Therefore, we reaffirm *Francisco* and hold that when, as here, a sentencing court relies on an incorrect guidelines range, the defendant is entitled to be resentenced. We note that this case does not fall into the exception to resentencing articulated in *Francisco* because, while the trial court here indicated that it would impose the same sentence on remand, that sentence does not fall within the corrected guidelines range. See *Francisco*, 474 Mich at 89 n 8.

## IV. REMEDY

In light of the fact that we remand this case for resentencing, it is necessary for us to clarify what that process requires in these circumstances—that is, where the original sentence falls outside the corrected guidelines range but the trial court has already indicated that it will impose the same sentence on remand.

To be clear, a remand for resentencing in this instance is not an inexorable command to the trial court to impose a different sentence. Instead, the sentencing court's responsibility on remand is to score the applicable sentencing variables based only on accurate information, correctly calculate the recommended minimum guidelines range, and consider the corrected guidelines range when imposing a new sentence.[5] The trial court is

---

[5] Despite conceding that, at least in some instances, resentencing may be warranted when a defendant is sentenced based on incorrect guidelines scoring, the dissent rejects our uniform approach in favor of "a *Crosby*-type remand." Yet the dissent's principal objection appears to be with the framing of our remedy as a resentencing. The dissent's preferred approach resembles our holding in many respects. It would likewise require the trial court to recalculate the applicable guidelines range based only on accurate information. And it would similarly allow the trial court to impose the original sentence on remand. The only real distinction is that the dissent would "permit the trial court to first address whether it would have imposed the same sentence had it not relied on inaccurate information or scoring," and "[i]f the trial court believes that it would have sentenced defendant differently, resentencing is required." The key difference with our holding is that we require the trial court to make that decision on the basis of accurate information,

12

not precluded from imposing the same sentence on remand if that sentence is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). Likewise, the trial court retains discretion to depart from the guidelines range but remains bound by *Lockridge*'s requirement that any such departure be reasonable. *Lockridge*, 498 Mich at 391-392.

Justice ZAHRA complains of our decision to order "a full-blown resentencing" in this case. To be sure, our decision in *Francisco* did recognize instances in which resentencing may not be required. *Francisco*, 474 Mich at 89 n 8.[6] A footnote in *Francisco* is not, however, a permission slip for trial courts to ignore the proper scoring of our sentencing guidelines. *Francisco*'s statement recognized that, for example, "[t]he record might reveal a fortuitous comment" indicating that the trial court "based the

---

after first rescoring the guidelines. We disagree that judicial resource considerations justify allowing that decision to be made on the basis of inaccurate or limited information.

[6] Federal authority likewise supports the existence of harmless sentencing errors and corrective hearings less than full resentencing, see, e.g., *Molina-Martinez v United States*, 578 US 189, 203-204; 136 S Ct 1338; 194 L Ed 2d 444 (2016), and the federal courts apply a presumption of harm to errors in calculating or applying the sentencing guidelines, see, e.g., *United States v Gates*, 48 F4th 463, 471 (CA 6, 2022) ("The burden is on the government to prove 'with certainty' that the district court would have imposed the same sentence had the Guidelines had [sic] been properly calculated.") (citation omitted); *United States v Sabillon-Umana*, 772 F3d 1328, 1333 (CA 10, 2014) ("Both before and after *United States v. Booker*, . . . this court has recognized that an obvious misapplication of the sentencing guidelines will usually satisfy the third and fourth elements of the plain error test."); *United States v Raia*, 993 F3d 185, 195 (CA 3, 2021) ("In the context of a Guidelines calculation error, harmless error means that the record must demonstrate that there is a high probability that the sentencing judge would have imposed the same sentence under a correct Guidelines range, that is, that the sentencing Guidelines range did not affect the sentence actually imposed.") (quotation marks and citation omitted).

13

sentence . . . on factors independent of the Guidelines," rendering a scoring error harmless. *United States v Archuleta*, 865 F3d 1280, 1291 (CA 10, 2017) (quotation marks, citations, and brackets omitted).

Here, we simply require the trial court to reconsider the appropriate sentence with the corrected guidelines in mind.

## V. CONCLUSION

Despite the fact that the trial court concluded that the sentence imposed was proportionate to defendant and his conviction regardless of the applicable guidelines range, we hold that the trial court erred in refusing to reconsider the sentence in light of the corrected scoring guidelines as *Francisco* requires. The Court of Appeals thus also erred in prematurely affirming defendant's sentence before remanding to the trial court for the appropriate guidelines range to be determined. Accordingly, we reverse the judgment of the Court of Appeals in part and remand to the trial court for resentencing. We do not retain jurisdiction.

> Megan K. Cavanagh
> Elizabeth M. Welch
> Kyra H. Bolden
> Kimberly A. Thomas
> Noah P. Hood

14

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                            No. 167760

EVAN TAYLOR ARMOGEDA,

       Defendant-Appellant.

_____

BERNSTEIN, J. (*concurring in part and dissenting in part*).

While I concur with the majority's result, I write to explain my disagreement on a fundamental point—the necessity of addressing whether *People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006), conflicts with *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). I would decline to reach this question, as I believe the error presented in this case is much simpler in nature and does not require us to apply *Francisco*.

In *People v Posey*, 512 Mich ___, ___; 1 NW3d 101, 109 (2023) (opinion by BOLDEN, J.), this Court considered whether substantive appellate review is available for a within-guidelines sentence. This Court held that "defendants may challenge the proportionality of *any* sentence on appeal and that the sentence is to be reviewed for reasonableness." *Id*. at ___; 1 NW3d at 127 (emphasis added). However, "[w]hen a trial court sentences a defendant *within* the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Id*. (emphasis added).

*Posey* thus clarified that, while all sentences are reviewable on appeal, within-guidelines sentences have a presumption of proportionality that a "[d]efendant bears the

burden of overcoming." *Id*. at ___; 1 NW3d at 125. Such a presumption does not attach to a sentence outside of the guidelines range. Accordingly, whether a sentence is a within-guidelines sentence is a meaningful determination necessary for the purposes of appellate review. In other words, if a defendant only bears the burden of overcoming a presumption of proportionality for a within-guidelines sentence, but no finding is made by the trial court as to what the appropriate guidelines range is, a defendant's ability to challenge the imposed sentence is then stymied. In such a situation, would a defendant have to present alternate arguments that a sentence is both within the guidelines and outside of the guidelines? This also hinders the ability of an appellate court to engage in meaningful appellate review, given the lack of clarity as to what standard applies.

I would thus hold that the trial court erred in refusing to resolve the scoring issues that prevented it from finding what guidelines range was applicable, as that determination has a meaningful impact on how defendant's sentence can be reviewed on appeal. Accordingly, I agree with the majority's decision to reverse the judgment of the Court of Appeals and remand to the trial court for resentencing.

Unlike the majority, I would instead conclude that the application of *Francisco* is not implicated and would leave the question of whether *Francisco* conflicts with *Lockridge* for another day. As the majority itself acknowledges, "[W]e have consistently emphasized the need for an individualized sentence based on accurate information[.]" This principle alone justifies the reversal of the sentence imposed in this case; reliance on the specific holding of *Francisco*, which, as the majority notes, is based "on a statutory provision that is no longer in effect," is unnecessary. Despite holding that *Francisco* remains good law post-*Lockridge*, the majority's analysis doesn't linger on the specifics of either case and

2

instead focuses mostly on foundational principles, such as the need for accurate information and fundamental fairness. Again, I agree with the majority that "[r]equiring trial courts to sentence defendants on the basis of accurate information is not a controversial concept but rather is a matter of fundamental fairness and necessary for meaningful appellate review." However, none of that is dependent on *Francisco* itself.

The decision to rely specifically on *Francisco* appears to be a particularly curious one, especially given that the majority fails to acknowledge that *Francisco* was decided when the legislative guidelines were mandatory, and, accordingly, what impact *Lockridge*'s holding that the legislative guidelines are merely advisory has on *Francisco*. In other words, while the majority relies on the specific holding in *Francisco* to justify its conclusion, it does not actually address the question presented in this case: whether *Francisco* survives *Lockridge*. Instead, it simply concludes that it does without explaining why or how.

*Francisco* itself was dependent on the mandatory nature of MCL 769.34(10), which was specifically rendered advisory in *Lockridge*. What impact did that change have on *Francisco*? The majority largely avoids confronting that question, instead simply stating that *Francisco* was only concerned with a permissive aspect of MCL 769.34(10). However, a close reading of *Francisco* reveals that the mandatory nature of MCL 769.34(10) *did* contribute to its holding. See *Francisco*, 474 Mich at 89 n 5.[1] It is

---

[1] The *Francisco* majority noted that, contrary to the dissent, the Legislature had not "expressly directed an appellate court to affirm" when a defendant's sentence was within the guidelines range and that the Legislature had instead only directed an appellate court to affirm when a defendant's sentence was within the guidelines range *absent* any scoring error or other inaccurate information. *Francisco*, 474 Mich at 89 n 5. The *Francisco* majority took it as meaningful that MCL 769.34(10) did not explicitly state that an

3

unsurprising to note that *Francisco* did not separate MCL 769.34(10) into mandatory or permissive sections, given that such a distinction did not become meaningful until years later in *Lockridge*.

All of this is to suggest that the majority's analysis flattens a complex issue in favor of an outcome that does not depend on *Francisco*, yet somehow still conflicts with it. In light of this, the majority's decision to reaffirm *Francisco* smacks of judicial activism at worst, and needless dicta at best. Accordingly, while I concur with the majority's decision to reverse and remand for resentencing, I dissent from the majority's unnecessary decision to reaffirm *Francisco*.

Richard H. Bernstein

---

appellate court must affirm a within-guidelines sentence where the guidelines range was impacted by some sort of error. The mandatory language of MCL 769.34(10) thus contributed to the *Francisco* holding, because this Court concluded that the Legislature had not tied an appellate court's hands under such circumstances.

Therefore, contrary to the majority's belief, *Francisco* depends in part on the mandatory nature of MCL 769.34(10), something that is left unexplored in the majority's opinion today. In changing trajectory and instead claiming that *Francisco* relies on a longstanding principle that appellate courts are obliged to correct substantive sentencing errors, the majority further highlights the fact that its reliance on *Francisco* is unnecessary.

4

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                        No. 167760

EVAN TAYLOR ARMOGEDA,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

The Court of Appeals correctly resolved this case by remanding this matter to the trial court for administrative correction of the presentence investigation report (PSIR). I take issue, however, with this Court remanding this matter to the trial court for resentencing. The Court's majority relies on *People v Francisco*[1] to require a full-blown resentencing of defendant based on the corrected PSIR. But resentencing is entirely unnecessary in this case. Here, the sentencing court expressly stated on the record at the time the original sentence was imposed that it would not sentence defendant to less than 30 years' imprisonment even if defendant's arguments relating to the scoring of the offense variables (OVs) or prior record variables (PRVs) were meritorious. The sentencing court further developed the record by indicating that defendant would not be sentenced to less than 30 years' imprisonment even if this sentence was outside of defendant's advisory minimum sentence guidelines range. Given this record, the remedy bestowed on defendant

_____

[1] *People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006).

by this Court is overly broad and not narrowly tailored to the facts of this case. Simply put, reliance on *Francisco* to require resentencing in this case is misplaced. To the extent we are to remand this matter to the trial court, I would follow the *Crosby*[2] remand procedures adopted by this Court in *People v Lockridge*.[3] Under the *Crosby/Lockridge* remand standard, the sentencing court may preliminarily determine whether correction of the PSIR would cause the court to impose a different sentence. Resentencing is only required if the court concludes that the information contained in the corrected PSIR would in fact lead the court to impose a different sentence.[4]

---

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[3] *People v Lockridge*, 498 Mich 358, 397; 870 NW2d 502 (2015) ("[T]he case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing.").

[4] I have difficulty harmonizing the majority opinion. The first paragraph of the majority opinion states, "[We] remand to the trial court for resentencing." In the conclusion, however, the majority opinion observes that "we simply require the trial court to reconsider the appropriate sentence with the corrected guidelines in mind." This observation causes me to ask, why is resentencing needed if the trial court decides to impose the same sentence on remand? This is why I conclude that the more tailored remedy is a *Crosby*/*Lockridge* remand. Further, the trial court will presumably have been apprised of the inaccurate or limited information that prompted the remand to the trial court, which ensures its decision to impose the same sentence on remand is based on accurate information.

Moreover, the Court's majority fails to appreciate the costs associated with resentencing, apparently finding appeal in defendant's quest to be resentenced by a different judge. But Michigan, like virtually every other jurisdiction in our nation, strongly supports the notion that court judgments must have finality. The justice system relies on the finality of closed cases, and a sentence should not be altered just because a new prosecutor or judge has a different opinion. Further, reopening an old case is cruel to the victims and their families, as it forces them to relive the trauma, attend new hearings, and abandon the closure upon which they once relied.

2

## I.  BASIC FACTS AND PROCEEDINGS

Defendant was living in California when he began an online romantic relationship with AO, a Michigan resident.  AO was good friends with the victim, ZW.  ZW even sent money to defendant so that he could move from California sooner to be with AO.  In November 2020, defendant moved from California to Michigan to be with AO and pursue a relationship with her.  He lived with AO for a short period of time, but when "[t]hings did not work out there," he moved out and lived with a friend.

Around December 2020, AO discovered that she was pregnant and informed defendant, adding that he could still be a part of the child's life.  For the next several weeks, defendant communicated with AO over text message and showed up at her residence multiple times, expressing resistance to the breakup and a desire to coparent the expected child.

On the evening of January 11, 2021, defendant was exchanging text messages with AO, while ZW sat next to her.  Defendant and ZW began a separate text thread with one another.  Defendant said he would come over with "fists only."  In frustration, ZW sent defendant a photo of AO along with two "kissy face" emojis, as well as a picture of AO kissing ZW on the cheek.  Defendant responded, "Have fun raising my baby. . . .  Catch you outside.  Run."

According to trial testimony, later that evening, defendant's friend tried to calm defendant, but defendant kept picking up a kitchen knife and putting it back down.  Eventually, defendant asked the friend to watch his dogs for him and said that he would be right back.  Some evidence suggested he told the friend that he was going to stab ZW.  Defendant arrived at AO's residence with a knife.  ZW, AO, and three others were present

3

when defendant arrived. As captured by video surveillance footage, ZW was standing at the window of a different vehicle next to AO and one other person and talking to two individuals inside the vehicle. Defendant exited his vehicle and approached ZW, looking like he was ready to fight. Defendant walked up to ZW and stabbed him with the knife, which was approximately 6 to 12 inches in length. Defendant returned to his car and drove away, discarding the knife along the way. The stab wound was approximately an inch and a half wide, between 1 and 5 inches deep, and located on the left upper quadrant of the abdomen. ZW survived after undergoing emergency surgery.

Someone quickly dialed 911, and the police dispatch put out a call for a stabbing that had just occurred. One of the responding officers, Officer Velazquez of the Meridian Township Police Department, was given the name of the suspect as well as a description of his vehicle. He drove to the apartment complex where defendant lived to look for him. While in the complex, he noticed a vehicle leaving the complex at high speed. The vehicle matched the description, so he activated his lights to attempt a stop of the vehicle. Instead of stopping, defendant fled. During the brief chase, defendant veered into the lane for oncoming traffic and also turned off his headlights. The chase ended when defendant hit a dead end. Officer Velazquez arrested defendant.

Defendant was charged with assault with intent to murder (AWIM), carrying a dangerous weapon with unlawful intent, assault with a dangerous weapon (felonious assault), and third-degree fleeing and eluding a police officer. The prosecution dismissed the felonious assault charge. Defendant was bound over and tried by a jury. The jury convicted defendant of all three remaining charges.

4

The Michigan Department of Corrections calculated defendant's guidelines minimum sentence range to be 270 to 450 months' imprisonment for AWIM, 22 to 38 months' imprisonment for carrying a weapon with unlawful intent, and 12 to 24 months' imprisonment for fleeing and eluding. The circuit court sentenced him to 360 to 600 months' imprisonment for AWIM, 22 to 60 months' imprisonment for carrying a weapon with unlawful intent, and 12 to 60 months' imprisonment for fleeing and eluding.

Defendant filed a timely motion to correct an invalid sentence. Defendant claimed that the trial court erroneously scored PRV 2 and OV 12. PRV 2 is scored for prior low severity felony convictions. OV 12 is scored for contemporaneous felonious criminal acts. The prosecution conceded that 10 points should not have been assessed for OV 12 but argued that the reduction of those points from the offense variable score would not change the guidelines minimum sentence range. Regarding PRV 2, the dispute turned on the Safe Neighborhoods and Schools Act, commonly known as California Proposition 47, which was a voter-approved initiative passed in November 2014. Defendant had an extensive criminal history in California with several prior low severity felony convictions. But, as a result of Proposition 47, many of these felonies have been reclassified as misdemeanors.[5]

---

[5] For instance, defendant has numerous convictions for drug possession beginning in 2003 and spanning over a decade, which likely fell under Cal Health & Safety Code 11350. When defendant committed many of these offenses, they were punishable by state imprisonment. See, e.g., Cal Health & Safety Code 11350, as amended by 2000 SB 550. Under Cal Penal Code 17(a), a felony is defined in relevant part to be "a crime that is punishable . . . by imprisonment in the state prison . . . ." But if a person were to violate Cal Health & Safety Code 11350(a) today, the offense (for a first-time offender) is punishable by imprisonment in county jail, which is not a felony. See also Cal Penal Code 1170.18 (providing a mechanism for individuals convicted of felonies who would have been guilty of misdemeanors had Proposition 47 been in effect at the time of their offenses to petition for resentencing and reclassification of such felonies to misdemeanors).

This made scoring PRV 2 somewhat challenging, as the parties could not agree on which of defendant's previous felonies may have been reclassified as misdemeanors.[6]

At the hearing on defendant's motion to correct an invalid sentence, his appellate counsel maintained that PRV 2 should be scored at zero points and that the resulting advisory guidelines minimum sentence range should be 171 to 285 months' imprisonment. The prosecution "concede[d] that conviction number 8 would be treated as a misdemeanor, which would lower the [PRVs] to 65, given a PRV-3, 20 points, total points being 65. That would make it an E-6 range, that range being 225 to 375." The prosecution alternatively argued that defendant's sentence would be justified as a departure from defendant's proposed guidelines range. At this point, the circuit court made its ruling:

> First of all, as judges always say, the guidelines are advisable. Even if the guidelines had been, and are—were appropriately 170 [sic: 171] to 285, I think 360 months is the lowest minimum sentence that I felt, in my discretion, was appropriate.

---

[6] Defendant's trial counsel at the original sentencing hearing acknowledged how challenging it was scoring PRV 2 and objected to the scoring, stating, "Although I would say that there are offenses in [defendant]'s criminal history which originate in California where we don't know what some of the substances were. But I know that during the relevant time frame he was using a variety of drugs. And while some—depending on what the substance may have been, some of them have changed today and are no longer felonies and some that would be misdemeanors in California would be felonies here because possession of heroin, methamphetamine, or cocaine here in Michigan is a felony. So there is not a clear line."

Trial counsel also acknowledged, "I don't have the case that I can hang my hat on to say that the number of misdemeanors or felonies based on a particular statute is incorrect. So I will leave it at that." The trial court responded, "Leave it at that. And I will accept them as reported then. I appreciate the researching of those items. Okay."

6

This act didn't kill the victim by a confluence of a lot of very fortuitous things. That there were people on the scene to stop bleeding. That there was very quick transmittal, emergency run to Sparrow Hospital. That the knife almost miraculously didn't go any higher or any lower, and it didn't hit enough of a major blood vessel to cause the victim to bleed out. And the harm that was done was grave.

I—the harm to the victim just didn't—just in my discretion, then and now, regardless of these scores, I'm just not able to go any lower than that on the minimum. So I deny the motion for new trial, deny the motion for resentencing. And those are the reasons.

It's nothing scientific, honestly. It's just not a scientific thing. It's because there was a—there was a video that probably got played several times in the car. And—but for just the confluence of a lot of fortuitous circumstances, the victim wouldn't have been at the trial to testify, because he would have been dead. And he lost a great percentage of blood in his body. I can't remember, for the record, what it was, but it was a big number.

The court continued:

I'm sure . . . it's a little comfort to Defendant and Defense counsel. But there's no mechanical guidelines scoring that could controvert the severity of this crime, and impact on the victim to lead to any lower number than what I did. And that's not out of malice toward the victim or the Defendant. It's just what it came down to.

The Court of Appeals affirmed defendant's sentence in an unpublished per curiam opinion, holding that the trial court did not err when it "acknowledged two possible corrected guideline ranges but clearly stated that it intended to impose the same minimum

7

sentence regardless so that resentencing was unnecessary."[7]  Defendant appealed to this

Court, and we ordered oral argument on the application.[8]

## II. DISCUSSION

The majority posits that "[i]t is impossible for an appellate court to discern whether that judicial choice is reasonable when that choice was not made with accurate information."  This is a mischaracterization of the proceedings.  The trial court clearly stated that it would have sentenced defendant to the same sentence even if the guidelines were as defendant proposed.  Thus, the court accounted for the "accurate information" and determined that it would not have made a difference.

Resentencing in this case is simply inappropriate.  Now that the parties have stipulated that PRV 2 should have been scored at zero and that defendant's guidelines range is as he proposed, the trial court cannot be expected to reach a different sentencing conclusion.  Indeed, the court expressly said it would not.  Moreover, defendant's

---

[7] *People v Armogeda*, unpublished per curiam opinion of the Court of Appeals, issued October 4, 2024 (Docket No. 365184), pp 8-9.  The Court of Appeals also "remand[ed] for a hearing to clarify the correct assessment of PRV 2, and adjustment of the guidelines sentencing range to consider the correct scoring of PRV 2 and OV 12, and correction of the PSIR to reflect these determinations." *Id*. at 9.  I do conclude that the trial court erred by not resolving the challenge and updating the PSIR if needed.  That is, the PSIR must be provided to the Department of Corrections, MCL 771.14(9)(a) and MCR 6.425(E), and it can have ramifications related to security classification or parole, see *People v Maben*, 313 Mich App 545, 553; 884 NW2d 314 (2015).

[8] The order directed the parties to address "whether resentencing is required where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error, but the sentence does not fall within the appropriate guidelines range as amended.  See *People v Francisco*, 474 Mich 82, 89 n 8 (2006); see also *People v Lockridge*, 498 Mich 358 (2015)." *People v Armogeda*, ___ Mich ___, ___; 19 NW3d 385, 385 (2025).

motivation for resentencing should be reason enough for this Court to discourage relitigating the same issue. Defendant's supplemental brief suggests that resentencing will not result in the same sentence being imposed because the judge that denied his motion to correct an invalid sentence was a temporary visiting judge and is no longer presiding over the seat that would resentence defendant. Instead, defendant expects that the new judge will "fulfill their constitutional duty to accurately calculate the Michigan Sentencing Guidelines, consider them as a highly relevant factor, and likely sentence [defendant] to a within guidelines sentence." In other words, rather than actually challenging whether his sentence is constitutional, which he does not, defendant seeks resentencing before a new judge who is unfamiliar with the facts of the case, anticipating that this judge will sentence him more favorably. This alone should give pause to remanding for a full-blown resentencing.[9]

In addition, the question posed to this Court is "whether *resentencing* is required where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error, but the sentence does not fall within the appropriate guidelines range as amended."[10] In *Francisco*,

> [t]he trial court sentenced [the] defendant to 102 to 480 months of imprisonment under the belief that the statutory sentencing guidelines set forth a minimum range of 87 to 217 months. However, when the statutory sentencing guidelines are correctly scored, they actually set forth a minimum range of 78 to 195 months. Thus, the trial court sentenced [the] defendant to

---

[9] See note 4 of this opinion.

[10] *Armogeda*, ___ Mich at ___; 19 NW3d at 385 (emphasis added).

a minimum of 102 months under a misapprehension of the guidelines range.[11]

The question turned on the remedy. The majority relied on MCL 769.34(10), which states in part that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." The majority held that "MCL 769.34(10) makes clear that the Legislature intended to have defendants sentenced according to accurately scored guidelines and in reliance on accurate information (although this Court might have presumed the same even absent such express language)."[12] The parenthetical is explained in a footnote as responsive to the dissent's position that MCL 769.34(10) does not, by its terms, require a remand.[13] The dissent would have applied harmless error review "because [the] defendant's original sentence of 102 months, which derived from the original guidelines sentencing range of 87 to 217 months, still falls well within the . . . range of 78 to 195 months."[14] In response, the majority explained its disagreement with the dissent in this respect:

> What is the point in applying a harmless error rule if the error is always going to be harmless? And, why did the Legislature provide that a sentence that is within the appropriate guidelines range shall be affirmed "absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence," MCL 769.34(10), if it intended all

---

[11] *Francisco*, 474 Mich at 88.

[12] *Id*. at 89.

[13] See *id*. at 89 n 6.

[14] *Id*. at 94-95 (CORRIGAN, J., dissenting).

10

sentences that are within the appropriate guidelines to be affirmed, regardless of whether there was an error in scoring the guidelines?[15]

It should also be noted that a majority of Justices agreed, albeit for different reasons, that at least the first sentence of MCL 769.34(10) is unconstitutional.[16] To that end, *Francisco*'s reliance on MCL 769.34(10) would be somewhat misplaced, as the statute only contemplated the remedy of "resentencing" for "error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." In other words, I agree with the majority in *Francisco*, to the extent that such an error requires a remand, largely for the majority's reasons refuting the application of harmless error review. But I do not believe resentencing is required in these circumstances. Rather, I would adopt a remedy similar to the remedy adopted in *Lockridge*,[17] i.e., a *Crosby* remand, and permit the trial court to first address whether it would have imposed the same sentence had it not relied on inaccurate information or scoring. If the trial court believes that it would have sentenced defendant differently, resentencing is required. *Francisco* itself provides a good example of when resentencing is required given that the trial court

---

[15] *Id*. at 91 n 10 (opinion of the Court).

[16] See *People v Posey*, 512 Mich ___, ___; 1 NW3d 101, 125 (2023) (opinion by BOLDEN, J., joined by BERNSTEIN, J.) ("[S]triking MCL 769.34(10) is necessary to avoid perpetuating the Sixth Amendment violation through unyielding pressure from the appellate courts above."); *id*. at ___; 1 NW3d at 127 (opinion by CAVANAGH, J.) ("I agree with the majority that the first sentence of MCL 769.34(10) is unconstitutional, and I concur in full with the lead opinion's reasoning on this point."); *id*. at ___; 1 NW3d at 143 (opinion by WELCH, J.) ("The first sentence of MCL 769.34(10) must be severed to the extent it requires appellate courts to affirm within-guidelines sentences.").

[17] See *Lockridge*, 498 Mich at 394-400.

indicated an intent to sentence the defendant "near the bottom" of the guidelines.[18]  But in many cases, a full-blown resentencing will not be necessary and will be a waste of judicial resources.  In addition, a *Crosby*-type remand may spare victims and their families from reliving the trauma of the offense.

### III.  CONCLUSION

I conclude that remanding to the trial court is unnecessary as the trial court clearly indicated it would have imposed the same sentence notwithstanding the inaccurate information.  I reject the remedy adopted in the majority opinion that relies on *Francisco* to require a full resentencing of defendant.  I would impose the more tailored remedy of a *Crosby* remand, as employed by this Court in *Lockridge*.  For these reasons, I dissent.

Brian K. Zahra

---

[18] *Francisco*, 474 Mich at 91.